Aloha and good morning, your honors. May it please the court, I'm Kevin Block on behalf of the petitioner Alfredo Macedo Templos. I'm going to reserve just one minute for rebuttal. So we're requesting a remand because of a significant mistake that happened early on in the case. If you look at the IJ decision at page 60 of the record, the IJ said that the particular social group was not cognizable and he relied on Ochoa v. Gonzalez and Leidy v. INS. And this is exactly what Pirarbach warned against because Pirarbach stood for the idea that we can't rely on previous cases in different countries to establish the cognizability of a PSG, of a particular social group. I found four other cases just this year that are similar in that the cases were remanded in light of, in the cases of the languages, in light of intervening cases. All four of them for the same reason, that the particular social group, in particular the prong about socially distinct, the cases weren't analyzed in light of that new framework that came from Matter of M-E-V-G and Matter of W-G-R. But what framework is it, counsel, under which wealthy business owners could be a cognizable social group? I mean, what framework could there possibly be that could lead wealthy business owners to be a cognizable social group? Well, we believe that if the record were built under that framework and if the questions that the IJ had asked were asked in light of that framework, then it's possible that we could have succeeded. We believe we did succeed on particularity and immutability. It's just that the socially distinct prong changed under Matter of M-E-V-R and W-G-R. But the IJ didn't prevent you from putting on whatever evidence you chose to, correct? That's correct. Yeah, thanks for that question. Our position is that the IJ also has a role in developing the record. Here in our jurisdiction, at least, the two judges ask a lot of questions. And the questions that he asked were asked, you know, and his decision was rendered in a way that shows that he hadn't read Pereira-Bach and he wasn't using the new framework. And so, as far as, you know, as it relates to his role in developing the record, it was done under the wrong framework. And he relied on his... Did you make an objection when he did that? Thanks for that question. Your Honor, I wasn't the trial attorney. I just... Did the trial lawyer object to the analysis? No, no, Your Honor. We just brought it up as an issue on appeal that in his decision, the IJ cited two cases rather than doing the required fact-by-fact analysis of whether it's a PSG, a particular social group. What did the board do? The board, you know, sort of ignored that part. I guess our position is that... Well, we raised it in our brief that we feel like it was a flaw that is substantial evidence that compels a remand because the whole factual part of the record is wrong and the conclusion of the IJ is unsupported and it wasn't done. This case didn't get to avail itself of the new framework. You know, the timing is strange because all of this happened during 2014, so that's the same year that Gerard Bach came up and also the same year that the two BIA cases... But the BIA cited that case and said there's nothing in the record to show that the group articulated by Petitioner is perceived, considered, or recognized by society as a distinct social group and then citing Gerard Bach. Right. Yeah, that's exactly our point. So the record and the proceeding in the lower court was analyzed under the new framework because the BIA... But even with your statement as to a new framework, how does the evidence that you submitted even arguably demonstrate the particular social group even under what you say is a new change standard? What is it about the evidence that could lead to that conclusion? Your Honor, that, you know, to be, you know, in the interest of candor to the tribunal, it doesn't... It really doesn't support it. It would have to... Because the record was developed under a different framework and it was also analyzed under a different framework. You know, meeting the requirements for social distinction and even the previous ocular visibility and from the perspective of the persecutor requires a lot of development in the factual record. And if you're developing it under the wrong framework, you're not going to accidentally come up with social distinction. You know, country conditions reports don't really address that, so you'd have to get expert testimony or other types of scholarly works that address the particular social group. And it wasn't done because the cases were so new that the trial attorney didn't do it and the judge didn't even mention it in his analysis. I also, if I may, I just wanted to mention two other things. There's also a second intervening case that changed the standard for nexus to one reason rather than one central reason. And that's from the 2017 case Barajas-Romero v. Lynch, which, you know, broadened the standard to one reason rather than one central reason for nexus. And nexus was another part of the decision that the judge relied on and the BIA relied on. But our position is that in one of those cases that I mentioned, the four cases that arose this year in front of this body, the conclusion was that the panel doesn't get to nexus until they establish a particular social group. And so our position is that until we get the particular social group right, we can't really do the analysis on nexus. But we also want to point out that there's an intervening law that changed the standard for nexus as well. And one final point I wanted to mention briefly is that under the CAT claim, the Convention Against Torture, there's a lot of discussion in the BIA brief and from in the reply brief about acquiescence. And it is our position that in the record, the immigration judge concluded that the person that attacked the petitioner was a police officer. And there's also his own testimony. Are you talking about the statement where it says petitioner was threatened and also robbed by individuals identified as members of the police force? That's right. That's right, Your Honor. And so that we feel like that takes acquiescence out of the equation because it was a state actor that was the persecutor and therefore acquiescence doesn't enter into the equation. All right. Well, I guess I'll just, if I may, just reserve the rest of my time for rebuttal unless anybody has any other questions. Thank you, Your Honor. Thank you. Counsel, whenever you're ready. May I please record, Your Honor, Tim Randitz on behalf of the United States Attorney General. Substantial evidence supports the agency's denial of holding removal and CAT protection in this case. The agency's denial of holding removal was twofold. Counsel, why don't you speak a little slower? Thank you. Of course. Substantial evidence supports the agency's denial of holding of removal and CAT protection in this case. The holding of removal denial was based on two separate findings. First, the petitioner failed to proffer a cognizable particular social group, specifically a particular social group of wealthy or successful business owners. And second, that there was no nexus between any protected grounds whatsoever in any event. The petitioner, unfortunately, had mistreatment in the past motivated by criminal avarice. And the most easy way for the court to dispose of petitioners with a holding removal claim is a particular social group. This court and the board have repeatedly rejected attempts to define wealthy or successful business owners as a particular social group. And this is not simply because of social distinction or social visibility, as the petitioner claims under two claim works. This is because it lacks particularity and mutability. And that is what the board found. And also the immigration judge, in relying on Coe v. Gonzalez, that's what Coe v. Gonzalez also said, that it's not simply social distinction or social visibility. The problem is that success or wealth is inherently a subjective term that has varying opinions among society about what that means. So it can't be particular. It has no definable boundaries. And also, business owner is not an immutable characteristic, one that you cannot ask someone to change. And that is why a particular social group, as this one fails, and that's why the court has repeatedly rejected similar social groups. And moving on to the next deciding, which we don't need in this case, but the petitioner did mention an important case, Bras-Romero, which did find that the central reason standard does not apply to withholding or removal. And the immigration judge and the board both admittedly cite that standard, but they don't end up applying it because they don't find that a protected motivation was simply not the central reason for a petitioner's mistreatment or that it was a tangential reason for a petitioner's mistreatment. What they found was there was no protected ground whatsoever. And they went through the instances of harm that the petitioner experienced and found that each one was motivated by a criminal adverse. Rape or extortion. He was targeted, as his sister testified, because he was well-to-do. And he was simply the victim of being the target for criminal theft. And finally, the cat protection claim is also supported by substantial evidence. Petitioner noted that there was an incident in 2005 where a petitioner was robbed and beaten by two judicial police officers. Well, first, before we even get to acquiescence, it's important to note that you still need to establish a clear probability of torture to satisfy a cat claim. But the BIA didn't address that issue. Didn't the BIA find that he wasn't more likely to show that he would be tortured by or at the instigation or with the consent or acquiescence of a public official? The BIA didn't make a finding that he wasn't going to be subject to torture, did it? No. The board affirms the immigration judge. As we see, the board says they refer to the immigration judge's findings. There wasn't a clear probability of torture by or with the acquiescence of Mexican officials. So the court can review both decisions. And the immigration judge found there was no past persecution, which necessarily means there was no torture. But the way I read the BIA decision is, with regard to cat relief, is that all they found was that there wouldn't be instigation of or with the consent or acquiescence of Mexican authorities. And then the BIA, I think, incorrectly found that he wasn't subject to any harm by Mexican officials. Isn't that an incorrect statement by the BIA, the respondent was not subjected to any harm by Mexican officials? Yes, that is an incorrect statement. And then the board said, and the record does not indicate that Mexican authorities have any specific interest in harming the respondent. I mean, that's irrelevant, right? No, I believe that what I was about to discuss was the clear probability that the petitioner must establish. So when all these acts seem to be indiscriminate acts of criminal violence, which is admittedly pervasive in Mexico, he can't really show a clear probability that it's going to happen again. It's more likely than not to happen again when they seem to have occurred with no motivation besides criminal theft. He's just basically saying there's a clear probability that I'll be subject to crime again. But I don't think you can say that. At least the record does not compel the conclusion that he'll be more likely than not the victim of crime again. And that's what the BIA is saying in that statement. Even though the BIA does erroneously state there was no Mexican official involvement, the BIA is still affirming the immigration judge, who does correctly note, as the court noted in the petitioner's argument, he notes that Petitioner was harmed and robbed by judicial police officers. And the immigration judge still found that, nonetheless, there would be not a clear probability of torture where there's no past persecution, which is another way of saying that perhaps Petitioner has shown that, for acquiescent purposes, that maybe police would take his money and rob him again, but not that he would be tortured, that he would have the specific infliction of severe pain and suffering necessary for a tax claim. I read what the BIA says. I mean, it just strikes me as that they're not saying that he wouldn't be tortured, but just simply that there wouldn't be participation or acquiescence. I mean, shouldn't we? I agree. They certainly could have found that there wasn't evidence that rose to the level that would be required for cat relief, but given their incorrect finding, especially as to not subjected to harm by Mexican officials, and at best, I think, from your perspective, the ambiguity of their finding, wouldn't we be better remanding it to the BIA? I think there is a degree of ambiguity in the board's paragraph, but there's not in the immigration judge's decision, which the board's affirming. So while there's a problematic statement in the board's decision, it's still stating specifically, it's affirming the immigration judge's reasoning as well as adding reasoning of it known. And so the court can confidently say the immigration judge found correctly that there was no past persecution and there's no clear probability of torture for the same similar reasons. And so you think the language where it says, we affirm the determination that the respondent has not set forth a valid claim for protection against the convention against torture is enough for us to go back to the findings of the immigration judge, even though there's no statement by the BIA that he wasn't tortured and there's an incorrect statement about whether the harm was inflicted by police officials, that we can just go back, in your view, to the IJ's statement? Yes, and that is not something that's uncommon with Ninth Circuit or other circuit courts of appeals, because the board, when it affirms an immigration judge, the court can review both decisions to find for substantial evidence to support denial of relief and protection. What about the kidnapping of the daughter? References of cat protection, the kidnapping of the daughter was an important incident, but also again, it was motivated solely by criminal violence. The daughter's letter specifically says in her letter to the court, she asked her kidnappers for motivation and they said payment. They just wanted payment. Is that why they raped her too? We don't know. We have no motivation for why they raped her. Didn't she say that these were convicted by police officers? Excuse me, can you repeat that? Wasn't there a finding that the victim inculpated police officers in her kidnapping and rape? I don't believe there was. The police only assisted in the kidnapping and rape, assisted in helping the victim in this case. There was no police involvement, if you're saying corrupt officials in that incident. What happened is that Petitioner's sister reported the disappearance of Petitioner's daughter to police, and that's in the record. And then the kidnappers contacted Petitioner and Petitioner's sister, and that's when they organized the ransom payment. And 12 hours later, she was released after the payment, and the police assisted her and took her to seek medical treatment, and they also took her to a prosecutor's office. Didn't the victim also say that the kidnappers told the police that they had connections with the police and they would not be prosecuted? They threatened them not to contact the police. Because the police were collaborating with them. And there was a positive credibility finding as to not only the Petitioner, but as to all his witnesses, correct? There's no adverse credibility finding. No, no, there was a positive credibility finding, not lack of adverse credibility finding. There was a credibility finding that the IJ believed the plaintiff, the Petitioner, and his witnesses, correct? Excuse me, I guess I view that as two sides of the same coin, that there was a positive credibility finding, there was no adverse credibility finding. Correct. Okay. All right. I have no further questions. Counsel, if you have any closing, otherwise your time has expired. No, Your Honor, thank you very much. All right. Counsel, you have, why don't we put two minutes on the clock for rebuttal? Thank you, Your Honor. Yeah, so with regard to immutability, our argument is that having wealth is not a characteristic that the Petitioner should be required to change. And that argument is supported by the BIA in the case that the, actually that the Department of Justice sites, which is AME and JGU, which found that affluent Guatemalans did not meet, did meet the immutability standard, but failed because of particularity. And they said specifically that wealth is a characteristic, that it's a shared characteristic so fundamental to identity or conscience that it should not be changed. And then with regard to nexus, with all due respect to my learning colleague, he even says in his argument just now, in oral argument and also in his brief, that the reason that the Petitioner was targeted was because he was wealthy. And so there is at least one reason that he was targeted, is because of the particular social group that we are proffering. And finally, we feel like the error that the immigration judge is so stark and egregious that it requires a remand, because he says, I mean, you can read it on page 60, but he says, he cites those two cases, and then he says, the respondent's identification as a wealthy business owner resembles those two cases, and as such, the respondent has failed to establish that he is under a protected group. So he relies on those two cases to make a determination. And that's exactly the kind of reliance on prior cases in different countries that per our prohibits. And it shows that he didn't do a case-by-case analysis, and the Petitioner is entitled to the trier effect to review the case as a case-by-case analysis. And I didn't really get to Kat, but our position is the same, that the key acquiescence is out because the actor was a police officer, and therefore we look at the six elements of torture from the BIA case matter of JE, and we find that he meets all of those because he was held against his will, he was punched, he was threatened with death. All right. Thank you. Thank you, counsel. Thank both counsel for their helpful arguments. The case just argued will be submitted.
judges: Wallace, Bea, Bennett